David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*LYNN ROBLES*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LYNN ROBLES, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| SNAP ADVANCES, LLC | **COMPLAINT** |
| Defendant. | |

For this Complaint, Plaintiff LYNN ROBLES, by undersigned counsel, states as follows:

## **JURISDICTION**

1. This action arises from Defendant negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal

knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA and state law claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

3. This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

5. Plaintiff LYNN ROBLES ("Plaintiff") is an adult individual residing in Las Vegas, Nevada, and is a "person" as defined by 47 U.S.C. § 153 (39).

6. Defendant SNAP ADVANCES, LLC ("Snap") is, and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

# THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA regulates, among other things, the use of automated telephone dialing systems.

9. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)  to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)  to dial such numbers.

10. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

11. On September 20, 2018, in *Marks v. Crunch San Diego LLC*, the Ninth Circuit noted that the statutory definition of an ATDS: "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)[.]"

904 F.3d 1041, 1052-53 (9th Cir. 2018).[1] The panel clarified that "[c]ommon sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions." *Id.*

12. The *Marks* panel also found that regulations promulgated by the Federal Communications Commission's ("FCC") had been vacated by the District of Columbia Circuit in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018), and that "only the statutory definition of ATDS as set forth by Congress in 1991 remains." 904 F.3d at 1049. In so concluding, the *Marks* court noted that prior regulatory guidance from the FCC did little more than to restate the terms of the TCPA itself, and that "the existence of a parroting regulation does not change the act that the question here is not the meaning of the regulation but the meaning of the statute." *Id.* at 1049 n.5 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)).

13. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

---

[1] Consequently, the Court rejected appellee's "argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever." *Id.*

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

4

14. A caller may not limit the manner in which revocation of prior express consent to call may occur and that the burden is on the caller to prove it obtained the necessary prior express consent.

15. Further, consumers (like Plaintiff) may revoke consent through any reasonable means.

16. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.

17. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times.

18. Consumers have a right to revoke consent, using any reasonable method including orally or in writing.

**ALLEGATIONS APPLICABLE TO ALL COUNTS**

19. Prior to filing the instant complaint, Plaintiff received numerous calls and text messages from Snap from the following phone numbers: 281-972-8522, 805-349-2669, and 801-622-9020.

20. Snap employs a type of technology called "Short Message Services." The term "Short Message Services" or "SMS" is a messaging system that allows

cellular phone subscribers to use their cellular telephone to send and receive short text messages, usually limited to 160 characters.

21. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be instantly received by the called party virtually anywhere in the world.

22. Moreover, Snap did not have prior express consent to place any text message calls to Plaintiff on Plaintiff's cellular telephone at any time after Plaintiff advised Snap that it no longer had consent to place SMS calls to Plaintiff's cell phone.

23. Upon information and belief, Snap employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

24. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential

order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

25. Predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

26. Upon information and belief, the predictive dialing system employed by Snap transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

27. Snap or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "5095" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

28. On or about May 31, 2019, Plaintiff filed for Chapter 7 Bankruptcy in the District of Nevada. Plaintiff was assigned case number 19-13500-mkn.

29. Snap received notice of the Bankruptcy and that and prior consent (if any ever existed) to communicate with the Plaintiff regarding the via an ATDS was revoked.

30. Moreover, upon information and belief, Snap did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

31. However, Snap placed calls to Plaintiff's cellular telephone without consent using an ATDS, in violation of the TCPA.

32. Snap's ATDS has the capacity to store or produce telephone numbers to be dialed, using a random or sequential number generator.

33. The telephone number Snap contacted Plaintiff at was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

34. Snap's calls to Plaintiff's cellular telephone were not for "emergency purposes."

35. Pursuant to the TCPA, the burden is on Snap to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

36. Plaintiff suffered actual harm and loss, since the unwanted calls depleted Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from Snap's unwanted phone calls to Plaintiff's cell phone.

37. Plaintiff also suffered from an invasion of a legally protected interest by placing calls to Plaintiff's personal phone line when Snap had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

38. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

39. "[W]hen a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance." *Toldi v. Hyundai Capital Am.*, No. 2:16-CV—01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

40. Plaintiff was also personally affected, since Plaintiff felt her privacy had been invaded when Snap placed calls to Plaintiff's phone line without any consent to do so.

41. The injury suffered by Plaintiff is concrete because Snap's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Negligent Violations of the Telephone Consumer Protection Act, (47.S.C. § 227, *et seq.*)

42. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

43. Snap negligently placed multiple automated calls and texts to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

44. Each of the aforementioned calls and texts by Snap constitutes a negligent violation of the TCPA.

45. As a result of Snap's negligent violations of the TCPA, Plaintiff is

entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

46. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Snap in the future.

## COUNT II

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, (47.S.C. § 227, *et seq.*)**

47. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

48. Snap knowingly and/or willfully placed multiple automated calls and texts to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

49. Each of the aforementioned calls by Snap constitutes a knowing and/or willful violation of the TCPA.

50. As a result of Snap's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

51. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Snap in the future.

# COUNT III

## Snap's Violations of Nevada's Deceptive Trade Practices Act
## (NRS 598.0918)

52. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

53. "Solicitation" means "the act of . . . seeking to obtain" something – in this case money. *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

54. Here, Snap solicited Plaintiff to seek or obtain money from Plaintiff.

55. On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature. AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

56. As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers." *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

57. Further, AB 337 was specifically intended to apply to companies (like Snap) using "automatic calling" or automated dialing systems. As Ms. Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is

intended to do." *Id.* at page 4093.

58. In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing.

59. However, in violation of the above, Snap repeatedly and continuously placed telephone calls and texts to Plaintiff's residential phone (which is also Plaintiff's cellular phone) to solicit money from Plaintiff in a manner that would be considered annoying, abusive or harassing by a reasonable person.

60. Specifically, Snap placed calls and texts to Plaintiff's cell phone even after Plaintiff revoked any consent Snap had to place such calls and texts and implicitly advised Snap of the abusive collection conduct vis-à-vis its annoying phone calls which persisted even after her bankruptcy filing and notice to cease collection. This conduct is unquestionably harassing and annoying.

61. As a direct consequence of Snap's harassing phone calls, acts, practices and conduct, Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, and has otherwise been totally annoyed by Snap's intrusive and illegal phone calls. Plaintiff has also lost the use of personal and family time while enduring these frustrations.

62. Snap therefore violated NRS 598.0918(2).

63. Snap's violations of NRS 598.0918 constitute violations of NRS 41.600 and Plaintiff is entitled to relief under NRS 41.600.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant, awarding Plaintiff:

- injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

- statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

- treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

- actual damages including, but not limited to, the emotional distress Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

///

///

- attorney's fees and costs to counsel for Plaintiff; and

- such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: January 23, 2020

                                Respectfully submitted,

                                By  /s/ David H. Krieger, Esq.

                                  David H. Krieger, Esq.
                                  Nevada Bar No. 9086
                                  HAINES & KRIEGER, LLC
                                  8985 S. Eastern Avenue, Suite 350
                                  Henderson, Nevada 89123
                                  Phone: (702) 880-5554
                                  FAX: (702) 385-5518
                                  Email: dkrieger@hainesandkrieger.com

                                  Attorney for Plaintiff
                                  *LYNN ROBLES*